UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN PISUT, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6858 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED TRANSPORTATION UNION, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Christian Pisut alleges that United Transportation Union ("UTU") breached its duty of fair representation by failing to challenge Canadian National Railway's termination of his employment pursuant to the appeal procedures set forth in the applicable collective bargaining agreement. The original complaint, Doc. 1, mistakenly invoked § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, but Pisut realized his error and now correctly premises his claim on the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. Doc. 15 at 6; Doc. 16-1; *see Steffens v. Bhd. of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Emps.*, 797 F.2d 442, 445 (7th Cir. 1986) ("The RLA affords an employee an implied right of action against his union for breach of the duty of fair representation."). UTU has moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), arguing that the pleadings establish that Pisut's claim is barred by the statute of limitations. Doc. 9. The motion is denied.

**Background**

In considering the motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents

1

that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Pisut's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Pisut as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Pisut was employed as a trainman by the Canadian National Railway when he was involved in an incident with two other crew members on or about April 14, 2010. Doc. 16-1 at ¶¶ 3, 11. About six days later, Pisut was notified that he was subject to discipline and a formal investigation. *Id*. at ¶ 12. On or about August 3, 2010, Pisut was notified that his employment was terminated as a result of the incident. *Id*. at ¶ 14.

At all relevant times, Pisut was a member of UTU, the union that served as his exclusive bargaining representative pursuant to a collective bargaining agreement ("Agreement") between UTU and Canadian National Railway. *Id*. at ¶ 4. Article 28, Section 1A of the Agreement states that UTU "shall have the exclusive right to represent all Trainmen in company level grievance, claim and disciplinary proceedings on those Companies on which the UTU is the lawfully recognized or certified collective bargaining representative for that craft." *Id*. at ¶ 6. Article 28, Section 1C adds that "[a]ll claims or grievances must be presented in writing by the Trainman involved, or on behalf of the Trainman by his Local Chairperson, to the officer of the Company authorized to receive same within sixty (60) days from the date of occurrence on which the claim or grievance is based." *Id*. at ¶ 7. Pursuant to Article 29, "no trainman shall be disciplined without a fair hearing by a company officer," and "discipline, if any, is to be assessed within fifteen (15) days of [an] investigation," which is ordinarily conducted within ten days of the time the railroad has sufficient knowledge of the incident. *Id*. at ¶ 8.

Article 29, Section D provides that "should any trainman consider that he has been unjustly dealt with, he shall have the right of appeal as provided in Article 28 of the Agreement." *Id*. at ¶ 9. It was UTU's responsibility to ensure that Canadian National Railway received timely notice of UTU's intent to appeal the termination of any of its members, and it was UTU's custom, policy, and/or common practice to appeal such terminations. *Id*. at ¶¶ 21, 23. Accordingly, pursuant to the Agreement, to challenge Pisut's termination, an appeal had to have been filed—and notice of UTU's intent to appeal had to have been given to Canadian National Railway—by October 3, 2010. *Id*. at ¶¶ 14, 22.

On or about August 3, 2010, the day he was terminated, Pisut called his UTU representative, Bill Hardlannert, and informed him of the termination. *Id*. at ¶ 15. Hardlannert told Pisut that "UTU would appeal [his] termination with [Canadian National Railway] and that [Pisut] was going to get his job back." *Ibid*. That same day, Pisut called his UTU local chairman, Dale DeKeyser, who told Pisut that "UTU would appeal [his] termination with [Canadian National Railway]." *Id*. at ¶ 16.

Seven months later, on or about March 3, 2011, Pisut called DeKeyser to check the status of the appeal. *Id*. at ¶ 17. DeKeyser told Pisut that "the union did not have the funds at that time to pay for [Pisut's] arbitration costs but that he would contact [Pisut] as soon as he had any information regarding the appeal." *Ibid*. On or about December 10, 2011, Pisut called the UTU general chairman, Red Dare, to check the status of the appeal and to ask when the arbitration hearing would take place. *Id*. at ¶ 18. Dare told Pisut that he did not have any information regarding the appeal. *Ibid*. Between 2011 and 2012, Pisut called Dare several times to check the status of the appeal and to ask for the date of the arbitration hearing. *Id*. at ¶ 19. Each time Pisut called, Dare told him that he did not have any information regarding the appeal. *Ibid*. On

or about May 13, 2013, Pisut again asked Dare for an update on the status of the appeal and for the date of his arbitration hearing. *Id*. at ¶ 20. Dare responded that UTU neither filed an appeal of Pisut's termination nor notified Canadian National Railway of its intent to appeal. *Id*. at ¶¶ 20, 24. This was the first time that UTU informed Pisut that it did not appeal his termination. *Id*. at ¶ 25.

Pisut filed this suit less than five months later, on September 24, 2013, alleging that UTU breached its duty of fair representation by "arbitrarily failing to properly and timely notify [Canadian National Railway] of UTU's desire to appeal [Pisut's] termination." *Id*. at ¶¶ 31, 32.

## Discussion

"While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). UTU argues that Pisut's claim is barred by the statute of limitations. Doc. 10 at 6. An RLA breach of duty of fair representation suit must be brought within six months of the alleged violation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170-72 (1983); *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985) (per curiam); *Ranieri v. United Transp. Union*, 743 F.2d 598, 599 (7th Cir. 1984). Both parties acknowledge the general rule that the limitations period commences when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty]." *Dozier*, 760 F.2d at 851 (quoting *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir. 1983)); *see also Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). The parties also agree that the act constituting

UTU's alleged breach was its failure by the October 3, 2010 deadline to appeal Pisut's termination and to notify Canadian National Railway of UTU's intent to appeal.

Pisut filed this case on September 24, 2013, so his suit is timely if he neither discovered nor reasonably should have discovered the alleged RLA breach until after March 24, 2013. Pisut maintains that he did not discover and could not reasonably have discovered the alleged breach until May 13, 2013, when UTU first informed him that it had failed to appeal his termination. Doc. 15 at 7. UTU submits that Pisut should have become aware of UTU's failure to file an appeal no later than December 10, 2011, when Dare told Pisut that he had no information regarding the appeal. Doc. 10 at 8. UTU contends that "[a]t this point, a reasonable Plaintiff would have been put on notice that no appeal was filed, or at the very least would lead one to question what had happened to his appeal," and it notes that "[Pisut] did not go back and question the [local chairperson, DeKeyser, who had told Pisut that UTU would file an appeal]," and "[o]ther than repeatedly calling GC [general chairman] Dare and getting the same response, [Pisut] did nothing." Doc. 19 at 2. UTU cites three cases where the Seventh Circuit held that the RLA limitations period began prior to the plaintiff receiving actual notice from the union that it would not pursue the plaintiff's requested action. *See Christiansen*, 178 F.3d at 914-15 (holding that the plaintiff "should reasonably have become aware of the union's 1991 decision [not to file a grievance on the plaintiff's behalf] well before [the union notified the plaintiff on] December 3, 1996," explaining that "the plaintiff indicated in her deposition that the reason she kept asking the union to do something about her learn-to-earn complaint was that she realized Local 957 had filed no grievance on her behalf"); *Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 327 (7th Cir. 1992) (holding that the plaintiff's claim accrued on the day that he sent an accusatory letter to the union, which revealed that he "knew that the union would not pursue his claim"); *Metz*,

715 F.2d at 304 (holding that the "inactivity on the part of the union [in failing to file a grievance on the plaintiff's behalf] should have been discovered by the [plaintiff] prior to the six-month period preceding the initiation of [the] action" because the plaintiff acknowledged that the Union "failed and refused" to process her grievance despite repeated requests and because the plaintiff "knew, or at least should have known, that under the provisions of the [collective bargaining agreement governing the processing of a grievance,] the time to elect arbitration had [expired]").

At least as set forth in the pleadings, Pisut's situation is different that the situation presented in those three cases. Taking Pisut's factual allegations as true and drawing all inferences in his favor, Pisut could not reasonably have discovered that UTU did not appeal his termination until May 13, 2013, when Dare informed him of such. Immediately after Pisut was terminated in August 2010 and two months before the deadline for filing an appeal, Hardlannert and DeKeyser assured Pisut that UTU would appeal the termination. Doc. 16-1 at ¶¶ 15-16. Until his discussion with Dare on May 13, 2013, Pisut had no reason to know that UTU had not, in fact, submitted the appeal.

The pleadings do establish that Pisut was on notice well before May 13, 2013 of UTU's inability or reluctance to *arbitrate* the appeal. Pisut was aware of this on March 3, 2011, when DeKeyser told him that the union did not have the funds at that time to pay arbitration costs. *Id*. at ¶ 17. During a conversation on December 10, 2011, Pisut specifically asked Dare when the arbitration hearing would take place. *Id*. at ¶ 18. Dare's response that he did not have information regarding Pisut's appeal cannot be interpreted as stating or suggesting, contrary to what Hardlannert and DeKeyser had promised, that no appeal had been filed. Viewed in context—and in the light most favorable to Pisut—Dare's response addressed not whether an *appeal* had been filed, but rather when the *arbitration hearing* would occur. It was only during a

call on May 13, 2013, when Pisut again asked Dare about the arbitration hearing, that Dare told Pisut that UTU had not filed an appeal in the first place. *Id*. at ¶ 20. Until that date, Pisut was under the impression that an appeal had been filed but that UTU was simply dragging its heels in scheduling an arbitration hearing. On this understanding of the facts, which may or may not turn out to be correct, Pisut could not reasonably have known until May 13, 2013 that UTU did not actually submit an appeal, which means that his suit, filed less than five months later, complied with the six-month statute of limitations applicable to RLA fair representation claims.

## Conclusion

For these reasons, UTU's motion to dismiss is denied. UTU shall answer the amended complaint by March 18, 2014.

February 25, 2014

_____
United States District Judge